UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PEARLY MILLER,
o.b.o. T.M., a Minor,

       Plaintiff,                                      Hon. Ellen S. Carmody

v.                                                         Case No. 1:11 CV 859

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security that Plaintiff is not entitled to Supplemental Security Income under Title XVI of the Social Security Act. On November 15, 2011, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision, and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). The

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on February 27, 1998. On June 11, 2007, Plaintiff submitted an application for disability benefits, asserting that he has been disabled since March 1, 2007, due to asthma and a learning disability. (Tr. 149-55, 173). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 76-148). On May 18, 2010, Plaintiff appeared before ALJ William Reamon, with testimony being offered by Plaintiff, Plaintiff's mother, and medical expert, Dr. Thomas Ippel. (Tr. 31-64). In a written decision dated May 28, 2010, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 10-25). The Appeals Council declined to review this determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g).

## RELEVANT MEDICAL EVIDENCE[1]

Educational records dated February 12, 2007, reveal that T.M. "is having significant difficulty with basic reading and math." (Tr. 357). Specifically, it was noted that T.M. "has not mastered his basic phonics skills...[and] knows his addition and subtraction facts but cannot

---

[1] The only issue asserted by Plaintiff in this appeal is that the ALJ erred by failing to find that T.M. experienced an "extreme" limitation in the domain of acquiring and using information. Thus, the following discussion focuses on those portions of the record relevant to Plaintiff's claim.

3

complete multi-digit problems both in isolation and when solving word problems." (Tr. 357). Because of these deficiencies, it was determined that T.M. would receive special education services. (Tr. 355-65).

On August 20, 2007, T.M. participated in a consultive examination conducted by Robert Griffith, Ph.D. (Tr. 398-400). T.M. was administered the Wechsler Intelligence Scale for Children the results of which revealed that T.M. scored: (1) in the "extremely low range" in the areas of word knowledge and oral math, (2) in the "weak or borderline range" in the areas of verbal concepts, social and general knowledge, visual discrimination, visual reasoning without motor activity, and immediate auditory attention, and (3) in the "low average to average range" in the areas of visual motor problem solving and reasoning and visual motor dexterity on a paper pencil task. (Tr. 398-400).

On August 29, 2007, William Schirado, Ph.D., reviewed the record in this matter and determined that while T.M. suffered from a "severe" impairment or combination of impairments such "does not meet, medically equal, or functionally equal" a listed impairment. (Tr. 403). In the domain of acquiring and using information, Dr. Schirado concluded that T.M. suffered from "less than marked" degree of limitation. (Tr. 405).

On September 7, 2008, Molly Lachnid, T.M.'s special education teacher, completed a questionnaire concerning T.M.'s performance in several domains of functioning. (Tr. 384-91). In the domain of acquiring and using information, Lachnid reported that T.M. experienced "a very serious problem" expressing ideas in written form and experienced "a serious problem" in the following areas: (1) comprehending oral instructions, (2) understanding school and content vocabulary, (3) reading and comprehending written material, (4) comprehending and doing math

4

problems, (5) understanding and participating in class discussions, (6) providing organized oral explanations and adequate descriptions, (7) learning new material, (8) recalling and applying previously learned material, and (9) applying problem solving skills in class discussions. (Tr. 385).

On March 26, 2009, T.M.'s teacher identified T.M.'s weaknesses as "reading" and "returning assignments" and T.M.'s strengths as "math" and "friendly [with] others." (Tr. 425). An academic progress report, completed by T.M.'s teacher during the 2008-2009 school year, indicates that in all areas of reading, writing, and mathematics T.M. was "progressing towards grade level expectation." (Tr. 426-27).

On March 24-25, 2010, Plaintiff participated in a "psycho-educational evaluation" conducted by school psychologist Rita Loper. (Tr. 549-52). With respect to T.M.'s behavior, Loper observed the following:

> During the evaluation sessions, [T.M.] seemed to show good effort and cooperation. He would answer questions politely and engaged in conversations when the examiner initiated them, seemingly open and honest. His attention to the tasks was appropriate for his age. He used slow and deliberate thinking when problem[] solving tasks that he found a challenge. Test results should be a fairly accurate indication of his current levels of functioning due to his good cooperation and effort most of the time.

(Tr. 551).

T.M. was administered the Kaufman Test of Educational Achievement, Second Edition (KTEA-II) and the oral and written language scales (OWLS) to assess his "overall academic functioning level." (Tr. 551). The results of these evaluations revealed the following:

> His best performance was in oral expression (5th grade equivalent) which falls within the average range when compared with his peers in 6th grade. Written expression (3.9 grade level) is in the low average range when compared with other students his age. Three

5

> years ago his score was at the 4th percentile but now it is at the 23rd percentile. He continues to have difficulties with spelling unfamiliar words but his content of ideas and use of compound sentences shows improvement.
>
> Math calculation (4.2 grade equivalent) has shown improvement over three years ago when it was an area of weakness. He has learned to divide and multiply with a specific process that works most of the time for him. Math reasoning (2.1 grade equivalent) was his lowest score and continues to be an area of concern. [T.M.] has difficulty understanding what operation to use to solve a word problem.
>
> Reading comprehension (3.2 grade equivalent) has improved from a standard score of 74 to 81 over the past three years. Decoding words in isolation (2.8 grade equivalent) continues to be an area of concern. He struggles with decoding multi-syllabic words. Listening comprehension using visual cues (82 SS: low average range) is similar to his reading comprehension.

(Tr. 551).

At the administrative hearing, T.M. testified that he enjoyed attending school, especially English and writing activities. (Tr. 44-45). T.M. reported that he enjoyed reading but experienced difficulty "sounding the words out...because [he] read[s] too fast." (Tr. 46-47). T.M. reported that he enjoyed the special education assistance he received at school and that it was helping him to "learn better and faster." (Tr. 47). The ALJ and T.M. then engaged in a lengthy discussion concerning T.M.'s various activities as well as T.M.'s interest in sports. (Tr. 50-55). At the conclusion of this exchange, the ALJ stated to T.M., "I can understand why the doctor said that you're a good speaker, because you are." (Tr. 55).

Dr. Thomas Ippel, licensed psychologist, testified as a medical expert. (Tr. 55-62). The doctor testified that T.M. experienced "borderline intellectual functioning" as well as a "specific learning disability" in the areas of reading and math reasoning. (Tr. 55-56). Dr. Ippel concluded,

however, that T.M.'s impairments did not meet or equal any impairment in the listing of impairments. (Tr. 56). As for T.M.'s ability in the domain of acquiring and using information, the doctor concluded that T.M. experienced "marked" limitations. (Tr. 57). As for why he did not characterize T.M.'s limitations as more severe, Dr. Ippel stated that "the primary reason would be although reading is certainly a very, very crucial function, [T.M.] seems to be progressing in other school areas reasonably given his IQ and the learning disability." (Tr. 59-60). The doctor further stated that "[c]ertainly it's very crucial for a person to be able to read. The fact that [T.M.] is able to read [at] a 2nd grade level and that he's progressing some is a positive indication. I think with continued specialized help there's a good chance because his presentation today certain shows that he's bright and curious." (Tr. 60).

## ANALYSIS OF THE ALJ'S DECISION

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924.

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity he cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125.

If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125.

After noting that Plaintiff was not engaged in substantial gainful activity, the ALJ proceeded to the second step of the analysis, finding that Plaintiff suffered from: (1) asthma; (2) borderline intellectual functioning; and (3) a learning disability in the areas of reading and math reasoning. (Tr. 13). At the third step of the analysis, the ALJ concluded that Plaintiff's impairments do not meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-25). The ALJ further determined that Plaintiff's impairments do not functionally equal in severity any impairment identified in the Listing of Impairments. (Tr. 14-25).

To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)-(b). To be considered disabled the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are:

  (i)  acquiring and using information,
  (ii)  attending and completing tasks,
  (iii)  interacting and relating with others,
  (iv)  moving about and manipulating objects,
  (v)  caring for yourself, and
  (vi)  health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that T.M. experienced a marked limitation in the domain of acquiring and using information. (Tr. 17-18). The ALJ found that Plaintiff experienced less than marked limitation in the following domains of functioning: (1) attending and completing tasks; (2) moving about and manipulating objects; and (3) health and physical well being. (Tr. 18-25). With respect to the following domains of functioning, the ALJ concluded that Plaintiff experienced no limitation: (1) interacting and relating to others and (2) caring for yourself. (Tr. 20-24). Accordingly, the ALJ determined that T.M. did not qualify for disability benefits.

    a.    Plaintiff is not Entitled to a Remand

In support of her request for relief, Plaintiff cites to evidence that was not presented to the ALJ, but was instead first submitted to the Appeals Council. The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To

satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question reveals the following. On February 8, 2011, T.M.'s teachers completed a "team report" regarding T.M.'s "present level of academic achievement and functional performance." (Tr. 344-50). With respect to "student strengths," the teachers reported that T.M. was a "hard worker, [with a] good sense of humor, [is] respectful, likes to play basketball and football, has lots of friends, [and] cares about getting work done." (Tr. 344). As for T.M.'s "present level of academic achievement and functional performance" the teachers reported the following:

> [T.M.] qualifies for special education services as a student with learning disabilities in the areas of basic reading and math reasoning. He is currently a 7th grader who is respectful, likes to play basketball and football, has a good sense of humor, and has lots of friends. [T.M.] has not had any major behavioral concerns this year, although he often has a hard time staying on-task and completing his work on time.
>
> According to the MEAP, MAP, and teacher observations, [T.M.] continues to show a need for goals and objectives in the area of basic reading. [T.M.] has consistently scored at the "not proficient" or "basic" levels in ELA portions of the MEAP. On the MAP assessment given in January 2011, he scored a 188 which is equal to a Lexile score of 375 (approx. 3rd gd. level). [T.M.] struggles, in part, due to his basic vocabulary level. He needs to continue to improve his understanding of vocabulary in content-related texts through identification of prefixes and suffixes and using context clues. Without special ed. support, this deficit will affect [T.M.'s] ability to read his content related texts and could keep him from mastering the required 8th grade [grade level content expectations].

> Based on MEAP, MAP, classroom common assessments, and teacher observation, [T.M.] continues to show a need for goals and objectives in the area of math reasoning. On the MEAP given in the fall 2010, [T.M.] received a score of 2L (proficient), although on the MAP he received a RIT score of 190 (typical 3rd grade level). [T.M.'s] performance indicates that he struggles with the vocabulary associated with mathematical operations in story problems and, therefore, has difficulty solving story problems. Without special ed. support, these deficits will inhibit [T.M.'s] ability to solve math story problems like his same age peers and could keep him from mastering the identified 8th grade [grade level content expectations].

(Tr. 345-46).

Plaintiff is not entitled to a remand for further consideration of this evidence for at least two reasons. First, Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same). Second, it is not reasonable to conclude that consideration of this evidence would have resulted in a different outcome. The Court concludes, therefore, that it is precluded from considering this evidence and, moreover, that there exists no basis for remanding this matter for its further consideration.

   b.  Acquiring and Using Information

  As previously noted, the ALJ concluded that in the domain of acquiring and using information, T.M. experienced marked limitations. Plaintiff argues that the ALJ erred by failing to conclude that T.M. experienced "extreme" limitations in this particular domain.

  The relevant Social Security regulations define a "marked" limitation as one which "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one which "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). An extreme limitation "is the rating we give to the worst limitations." *Id.*

  The domain of acquiring and using information is concerned with "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). With respect to "school-age children" (age 6 to attainment of age 12), the regulations provide that:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv).

  As for "adolescents," (age 12 to attainment of age 18), the regulations provide that:

>In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(2)(v).

>Examples of "limited functioning in acquiring and using information" include:
>
>(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.
>
>(ii) You cannot rhyme words or the sounds in words.
>
>(iii) You have difficulty recalling important things you learned in school yesterday.
>
>(iv) You have difficulty solving mathematics questions or computing arithmetic answers.
>
>(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3).

The ALJ concluded that while T.M. experienced "difficulty with reading and math," he simply did not exhibit "extreme" limitations of functioning in this particular domain. As the ALJ observed, and as the evidence detailed above reveals, while T.M. is learning disabled and lags behind his peers in certain reading and math skills, his abilities in these areas are being addressed through

13

special education services and are improving. In sum, the conclusion that T.M. suffers only "marked" limitations in this particular domain of functioning is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date:  September 7, 2012                           /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge